UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AROR ARK O'DIAH,

                                          Plaintiff,

                                                                                              <u>DECISION AND ORDER</u>

                                                                                              10-CV-6705L

                v.

D. ARTUS, et al.,

                                          Defendants.
_____

## BACKGROUND

Plaintiff, Aror Ark O'Diah, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. On August 24, 2012, the Court issued a Decision and Order, 887 F.Supp.2d 497, dismissing the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and denying plaintiff's motions for summary judgment and for leave to amend the complaint.

Plaintiff has moved "to modify or vacate, set aside, [and] declare null and void" the Court's August 24 Decision and Order. Dkt. #22. Treating plaintiff's motion as a motion to alter or amend a judgment under Fed. R. Civ. P. 59, the Court directed defendants to respond to plaintiff's assertion that the Court should have aggregated his several periods of confinement in the Special Housing Unit ("SHU") for purposes of determining whether plaintiff had adequately alleged a protected liberty interest with respect to his due process claim. Dkt. #23.

Defendants have filed a response (Dkt. #25), and plaintiff has filed an additional memorandum in support of his motion. Dkt. #26. Having considered both sides' submissions, the Court denies plaintiff's Rule 59 motion.

## DISCUSSION

"It is well-settled that Rule 59 is not a vehicle for ... presenting the case under new theories ... or otherwise taking a second bite at the apple ... ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quote omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Id.*

Again, the issue here is whether, under controlling Second Circuit precedent, the Court should have aggregated plaintiff's SHU sentences to determine whether he alleged the existence of a protected liberty interest for purposes of a due process claim. An inmate asserting a procedural due process claim arising from his placement in segregated confinement must establish "a protected liberty interest in not being confined" and that his "deprivation of that liberty interest occurred without due process of law." *Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997). In *Sandin v. Connor,* the Supreme Court established that a prisoner's restricted confinement within a prison does not give rise to a liberty interest warranting procedural due process protection unless the conditions and duration of the prisoner's confinement, "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995).

In determining whether a prisoner's SHU confinement implicates a protected liberty interest, the court must consider both the conditions and duration of that confinement. Although there is no mathematical test for determining how long a prisoner's period of SHU confinement must be before his due process rights are implicated, *Palmer v. Richards*, 364 F.3d 60, 64 (2d

Cir. 2004), the Second Circuit has held that a 101-day confinement does not, in itself, meet the *Sandin* standard of atypicality, absent unusually harsh conditions. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005); *Palmer*, 364 F.3d at 64-65. At the other extreme, confinements of 305 days or longer, even under otherwise ordinary conditions, may satisfy the *Sandin* standard of atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard of atypicality, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), the court has indicated that there is an intermediate range of "relatively long" sentences that require "specific articulation of fact findings before the district court [can] properly term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (segregative sentences of 125-288 days fall into the "relatively long" category). *See also Palmer*, 364 F.3d at 64-65 (confinements of intermediate length require inquiry into the actual conditions of confinement to determine whether plaintiff has established a protected liberty interest).

At issue in the case at bar is whether plaintiff's separate SHU sentences can or should be aggregated for purposes of this analysis. There is some authority that under certain circumstances, it may be appropriate to aggregate separate but consecutive periods of confinement if they constitute a "sustained period of confinement," *Giano v. Selsky,* 238 F.3d 223, 226 (2d Cir. 2001).

Plaintiff alleges that from about May 5, 2010 through early January 2011, he was confined to SHU for some 209 days. Dkt. #22 at 3. It appears, however, that his longest period of continuous SHU confinement was 111 days, from September 20, 2010 to January 9, 2011. *See* Dkt. #12 at 27. Plaintiff did serve additional 30-day sentences in May, June and August 2010, but they were discrete sentences that alternated with periods in which he was in the general population. Thus, they did not form a "sustained period of confinement."

The Second Circuit has indicated that when an inmate has been confined in SHU for some time, an official who imposes an additional, consecutive SHU sentence may be responsible, for § 1983 purposes, for the inmate's entire continuous period of confinement. *See Sealey v. Giltner*, 197 F.3d at 587 (aggregating an inmate's SHU sentences which ran without interruption, and holding that official who imposed second, 83-day sentence bore responsibility for 101-day aggregate of those 83 days of confinement and the 18 days that preceded it). *See also Reynoso v. Selsky*, 292 Fed.Appx. 120, 122 (2d Cir. 2008) ("*Overlapping* disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated") (emphasis added); *Giano*, 238 F.3d at 226 (aggregating sentences where plaintiff's segregation at one facility was "simply a continuation of his segregation at" the facility from which he had been transferred, and a "review of the record indicate[d] that the two periods of confinement were based on the same administrative rationale").

Thus, the only "sustained period of confinement" that the Court can consider here is plaintiff's 111 days of continuous confinement from September 11, 2010 to January 9, 2011. That puts plaintiff near the lower end of the intermediate range, which requires examination of the conditions of confinement to determine whether the prisoner's due process rights were implicated. *Palmer*, 364 F.3d at 64-65.[1]

Plaintiff, however, has failed to allege facts showing that the conditions of his confinement, combined with the duration of his confinement, created an "atypical and significant hardship." In the absence of such allegations, his due process claim fails. A claim based on harsh conditions of confinement may require a fact-intensive inquiry, but to survive a motion to

---

[1] The Second Circuit has indicated that the court can consider "the *frequency* and duration of confinements imposing significant hardships" in determining whether SHU confinement implicates a constitutionally protected liberty interest. *Ortiz*, 323 F.3d at 195 n.1 (emphasis added). I do not believe that plaintiff's other SHU sentences during the period in question were frequent enough to implicate a liberty interest, as there were generally some weeks in between them during which plaintiff was among the general prison population. Even if I were to aggregate these additional sentences, however, the additional 90 days would still put plaintiff's claims in the intermediate category described above, and the result here would be the same.

dismiss, the plaintiff must still plead a facially plausible claim. *See Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 547 (2007) (to survive a motion to dismiss, a complaint must include enough facts to state a claim for relief that is plausible on its face); *see, e.g., Versatile v. Kelly*, No. 3:11CV308, 2012 WL 1267896, at *6 (E.D.Va.) ("a plaintiff must allege facts suggesting that his or her conditions in administrative segregation or solitary confinement constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484), *aff'd*, 479 Fed.Appx. 510 (4th Cir. 2012); *Phelan v. Hersh*, No. 10-CV-0011, 2011 WL 6031940, at *8 (N.D.N.Y. Sept. 13, 2011) (though plaintiff's segregative sentences were "relatively long," plaintiff failed to allege facts showing that confinement was atypical or significant, and due process claims were therefore dismissed); *Brown v. Outhouse*, No. 07-cv-1169, 2010 WL 3862080, at *3 (N.D.N.Y. Sept. 27, 2010) ("because Brown has failed to even allege unusual confinement conditions, his due process claim cannot survive"); *Baker v. Finn*, No. 00 Civ. 3886, 2001 WL 1338919, at *4 (S.D.N.Y. Oct. 31, 2001) (dismissing complaint where plaintiff failed to allege that his 136-day confinement included "conditions atypical, or onerous, as compared to those experienced by other prisoners").

In any event, this Court's August 2012 Decision and Order in this case addressed the merits of plaintiff's due process claims, and found them to be without merit. *See* 887 F.Supp.2d at 500-01. A Rule 59 motion is not meant to provide "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" *Sequa Corp. v GBJ Corp.*, 156 F3d 136, 144 (2d Cir. 1998), but even if the Court were to reexamine its prior findings and conclusions with respect to the due process claims, the result would not change. Plaintiff has simply failed to allege facts showing that his due process rights were violated.[2]

---

[2] I also note that plaintiff alleges that his SHU confinement constituted "cruel and unusual punishment." Dkt. #22 at 3. To the extent that this appears to raise an Eighth Amendment claim, that claim was brought by plaintiff in his original complaint (Dkt.#1 ¶ 78), and was
(continued...)

**CONCLUSION**

Plaintiff's motion for reconsideration (Dkt. #22), which the Court construes as a motion for relief under Fed. R. Civ. P. 59, is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        April 17, 2013.

---

[2](...continued)
considered and rejected by this Court in its previous decision dismissing the complaint. Dkt.#20 at 2-3, 5-6). Plaintiff has not alleged any new facts suggesting that the Court should reconsider its holding in that regard.